USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/16/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT RYAN,                                  :
                                              :
                          Plaintiff, :
                                              :     1:18-cv-2600-GHW
         -against-                        :
                                              :     MEMORANDUM OPINION
ROCK GROUP, NY. CORP., SIMRANPAL              :        AND ORDER
SINGH, PRABHJIT SINGH,                        :
                                              :
                        Defendants. :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      One of the last lines of Defendants' opposition to Plaintiff's motion succinctly summarizes the problem facing the Court: "more mistakes have been made than could possibly be anticipated." Defs.' Opp'n to Sanctions Mot. (Opp'n), Dkt. No. 58, at 8. As the Second Circuit has explained, "[t]he extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation. The system functions because, in the vast majority of cases, we can rely on each side to preserve evidence and to disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018). This, unfortunately, is not one of those cases.

      Defendants also do not dispute that some sanctions are warranted, but instead request "the least harsh remedy, if any," or, specifically, additional time for Plaintiff to review the discovery that Defendant has allegedly produced. Opp'n at 1-2. This is because Defendants believe that there is no longer any need for significant judicial intervention—counsel has now produced all relevant discovery and has justifiable excuses for his previous failure to do so in a timely manner. Specifically, Mr. Richard Howard began working on this case after his partner, Mr. Thomas Bianco, fell in ill in late 2018, and during the "confusion" of the handover, failed to meet production deadlines. Opp'n 5-6. And counsel for Defendants encountered "language/frame of reference

issues"—whatever that means—when working with their clients, further delaying the production of responsive discovery. *Id.* at 5-7.

Defendants have produced additional documents in response to this motion. To that end, the Court considers the timeliness and extent of Defendants' work rectifying the mistakes that it made, and to what extent that work is sufficient.

I.  **BACKGROUND**

To contextualize the dispute at issue, a relatively detailed recitation of the procedural history of this case is warranted.

On February 7, 2018, Plaintiff served Defendants with a written document preservation notice. Declaration of Randi Cohen ("Cohen Decl."), Dkt. No. 55-1, Ex. 2 at 2. Plaintiff filed this action on March 26, 2018, Dkt. No. 5, and served Defendants with his complaint on April 9, 2018. The Court held an initial pretrial conference on June 20, 2018, and entered the case management plan and scheduled order governing the action. Dkt. No. 33.

On June 27, Plaintiff served interrogatories and document demands. On September 13, 2018, Plaintiff's counsel informed Mr. Bianco that although Plaintiff had long since left Rock Group NY Corp. ("Rock Group"), his corporate email account had never been terminated. Cohen Decl. Ex. 10, Dkt. No. 55-11. Thus, the automatic email-forwarding protocol that he had implemented while still at the company continued delivering Rock Group emails to Plaintiff's personal account.

Defendants responded to Plaintiff's discovery requests on September 25, 2019, providing Plaintiff with unverified responses almost a month after they were due. *See* Cohen Decl. Ex. 13. After reviewing the responses, Ms. Cohen emailed Mr. Bianco on October 1, 2018, stating that in light of information that had accidentally been forwarded to Plaintiff from his corporate email account, Ms. Cohen believed that some of the tax documents Defendants had produced had been "created specifically for this matter and then backdated." Cohen Decl. Ex. 12. Plaintiff wrote the Court on October 4, 2018 with respect to Defendants' deficient discovery responses, Dkt. No. 35,

2

and after a teleconference on October 5, 2018, the Court extended the fact discovery deadlines and set a new deadline for the completion of expert discovery, Dkt. No. 37.

On October 5, 2019, Plaintiff wrote Defendants about alleged deficiencies in Defendants' first document production. Cohen Decl. Ex. 13. Defendants did not reply, and so Plaintiff again sought Court assistance on October 29, 2018. Dkt. No. 38. The Court held a conference on October 30, 2018. During that conference, Mr. Howard noted that he had recently taken over the case from his partner Mr. Bianco, and was "just trying to put out fires" and therefore hadn't been able to properly turn to Ms. Cohen's letter before now, but intended to do so immediately. October 30, 2018 Tr. at 5. In light of that reassurance by Mr. Howard, the Court asked that the parties either begin working together to resolve discovery disputes, or begin litigating the dispute, as the deadlines in the case management plan are "real deadlines." *Id.* at 7.

Still, Mr. Howard did not respond to Plaintiff's letter. Ms. Cohen again wrote the Court on November 27, 2019, and the Court scheduled a teleconference for November 28, 2018. Dkt. Nos. 43, 44. Just before the call, Defendants filed supplemental discovery responses on the docket of this case. Dkt. No. 46. Mr. Howard's cover letter noted that between the execution of a confidentiality order and the production, only three weeks had elapsed, "a significant improvement on Defendants' response time." *Id.* at 1.

During the conference, the Court commented on the parties' troubling failure to communicate about discovery issues, and the adverse effects that those failures had on the parties' ability to effectively litigate this case. The Court again directed the parties to communicate with one other and meet and confer regarding discovery disputes. November 28, 2018 Tr. at 5.

On November 29, 2019, Plaintiff informed Defendants that the supplemental production was deficient. Cohen Decl. Ex. 16. Mr. Howard explained that he had not yet heard from his client. Depositions began in January, 2019, without Defendants further supplementing their production.

3

After Plaintiff deposed Defendant Prabhjit Singh, and Rock Group employees Donald Coello, and David Pradhan, Defendants finally produced another 240 pages of documents—none of which, Plaintiff asserts, were responsive to the November or December conversations between the parties.  Further, Mr. Coello, the Rock Group's office manager in charge of payroll, noted during his deposition that the record of checks Plaintiff showed him appeared incomplete.  "[W]e have other account [sic] that we provided checks to him, which we don't have here."  Cohen Decl. Ex. 1 at 47:22-48:3.  Mr. Coello also admitted to having deleted text messages that the plaintiff sent him because he "didn't want to get involved" in Plaintiff's dispute with Defendant Prabhjit Singh.

In a joint letter to the Court on February 4, 2019, the parties requested assistance from the Court regarding a "'bump in the road' leaving certain fact discovery outstanding."'  Dkt. No. 47 at 1.  Rock's counsel admitted that from his "notes from the depositions, it seems that not all relevant evidence was searched for by Defendants in discovery."  Dkt. No. 47 at 2.

On February 11, 2019, the Court held yet another telephone conference to discuss discovery.  During this call, Mr. Howard acknowledged that after taking over this case from Mr. Bianco, he did not take steps to identify where his client kept paper or electronic records, or where any relevant information may have been stored.  Further, he could not confirm whether a litigation hold had ever been issued.  Plaintiff asserted that two of the deponents did not recall receiving a litigation hold, and Mr. Coello had, at one point, deleted text messages from Plaintiff from his personal phone, constituting spoliation.  Two days later, on February 13, 2019, Mr. Howard finally issued a litigation hold.  Affidavit of Richard M. Howard ("Howard Aff.") Ex. 1, Dkt. No 57.

A few weeks after the conference, on March 7, 2019, Plaintiff moved for a variety of sanctions, including:  "(1) [s]triking Defendants' Answer and granting summary judgment on liability, and moving this case to inquest; (2) [a]warding attorneys' fees and costs for all time spent by Plaintiff's counsel following up on discovery; (3) [c]ompelling forensic review of Defendants' computers and personal devices (with protections for privacy), at Defendants' expense; (4)

4

[a]warding monetary sanctions against counsel for Defendants in the amount of $5,000 to go to the Lawyers' Fund for Client Protection of the State of New York; and (5) [a]ny other relied that this Court deems appropriate." Pl.'s Mot. for Sanctions ("Mot."), Dkt. No. 55 at 5.

After the motion was filed, Defendants have taken some corrective steps; they have produced additional documents to Plaintiff. But Plaintiff argues that some material deficiencies remain—specifically, that Defendants have not produced:

1. Any emails, texts, or communications of any kind, by and between Defendants;
2. Any emails, texts or communications of any kind by and between Defendants and certain specifically identified third parties;
3. The "sent" emails from Plaintiff's email account;
4. Information related to Defendant Rock Group New York's filings with the State Department of Labor (including prior findings of wage/hour violations);
5. Information related to Defendant Prabjhit Singh's criminal record.

Pl.'s Surreply, Dkt. No. 63, at 1. Defendants, in turn, again supplemented their production, and asserted that all other responsive material had been produced. Defs.' Sur-Surreply, Dkt. No. 64.

## II. LEGAL STANDARD

A district court has broad discretion to determine the appropriate sanctions for discovery abuses under both Rule 37 of the Federal Rules of Civil Procedure and its inherent powers. *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009). While Rule 37 sanctions require that a party violated a court order, *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991), sanctions under the court's inherent power require a showing of bad faith or willfulness, *see DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998). "When deciding a proper sanction, a court generally must consider, in light of the full record of the case, (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *Arista Records LLC*, 633 F. Supp. 2d at 138 (citing *DLC Mgmt.*, 163 F.3d at 136).

5

When evaluating the appropriate sanction for spoliation, a court must also consider the "prophylactic, punitive and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Thus, any sanctions should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence." *Id.*

The Court applies these considerations to each category of discovery misconduct that Plaintiff alleges: first, Defendants' failure to meaningfully participate in the discovery process, then Plaintiff's request for spoliation sanctions.

### III. DISCUSSION

#### A. Failure to engage in discovery

For the following reasons, the Court finds it appropriate to order Defendants to pay Plaintiff's reasonable expenses incurred in seeking judicial intervention for Defendants' repeated noncompliance with its discovery obligations

Bad Faith: As the factual recitation above makes clear, there are ample examples of bad faith on the part of defense counsel here to support a finding that this factor weighs heavily in favor of sanctioning Defendants. Defendants' untimely and incomplete productions, failure to meet and confer with Plaintiff regarding discovery disputes, and general failure to meaningfully engage in the discovery process warrants the imposition of sanctions under this Court's "inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).

After implementing a litigation hold, a party's counsel is obligated to become "fully familiar with her client's document retention policies, as well as the client's data retention architecture" to "make certain that all sources of potentially relevant information are identified . . . ." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). This invariably involves speaking with the

key players in the litigation to understand how and where they store information. *Id.* Counsel cannot just implement a litigation hold and then sit on his hands, hoping that parties retain and produce all relevant information. *Id.* Instead, discovery rules obligate counsel to monitor compliance so that all sources of discoverable information are identified and searched. *Id.* ("[C]ounsel and client must take some reasonable steps to see that sources of relevant information are located."); see also *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 CIV. 4837(HB), 2006 WL 1409413, at *6 (S.D.N.Y. May 23, 2006) (finding counsel's failure to ascertain all possible sources for relevant documents before deposition evidence of negligence).

As discussed during the February 11, 2019 conference, defense counsel never implemented a litigation hold, and never attempted to ascertain where and how his client stored relevant documents. During that conference, counsel offered for the first time "to go up to their office . . . in Mount Vernon, and assure that any paper files are reviewed, and I will assure that if there's more than one server, every server is culled. I don't think there's more than one server, but I can't swear to it. But I'll go there myself and assure that everything is done . . . ." Feb. 11, 2019 Tr. 15:6-12.

Further, counsel waited to produce documents until after Plaintiff sought judicial intervention. Although Ms. Cohen attempted to contact Mr. Howard before writing the Court on November 27, 2018, Mr. Howard did not produce documents to her until a few hours before the conference that the Court scheduled for November 28. Furthermore, in response to Plaintiff's sanctions motion, Defendants produced additional documents on March 28, 2019. *See* Dkt. No. 63. And then in response to Plaintiff's surreply, Defendants made yet another production. Dkt. No. 64. Waiting until Plaintiff seeks judicial intervention before producing documents in dribs and drabs is unacceptable behavior that flouts the spirit of voluntary participation expected of parties engaging in discovery. *See Klipsch Grp., Inc.*, 880 F.3d at 631. As the Second Circuit noted in *Residential Funding*, "as a discovery deadline . . . draws near, discovery conduct that might have been considered 'merely' discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and

7

to the court." 306 F.3d at 112. Viewed in that light, Defendants' failure to produce documents until after the close of fact discovery on January 22, 2019 particularly evinces bad faith. This factor weighs heavily in favor of sanctions.

   History of noncompliance: This motion and the many conferences the Court has convened to discuss discovery disputes is the result of Defendants' repeated noncompliance with its discovery obligations. November 28, 2019 Tr. at 4:17-5:5. This factor weighs heavily in favor of sanctions.

   Effectiveness of lesser sanctions: The Court has not yet imposed other sanctions, but, in its discretion, finds that compensating Plaintiff for the time and money spent pursuing production would simultaneously be the most effective and least onerous appropriate sanctions.

   Previous warnings about the possibility of sanctions: The Court warned the parties of the possibility that it might impose sanctions should any party fail to comply with her discovery obligations. For example, during the October 30, 2018 conference, the Court said:

> The parties are aware of all of the sanctions for noncompliance with discovery obligations. I won't lecture you with respect to them. You know what they are. You also know that failure to respond to a deposition notice that is effective can have serious consequences as established in the rules. So again I won't harp on those issues because you're aware of them.

October 30, 2018 Tr. 7:13-19. And during the November 28, 2018 conference, the Court again noted the possibility that defense counsel's failure to comply with discovery obligations may lead to sanctions:

> I appreciate the competing demands on your time, counsel for defendants. At the same time, I am going to need to ask the parties to confer about these issues, and I'm concerned that the parties' failure to communicate about discovery issues may be impeding your ability to efficiently litigate the case. And my fear is that your inability to do so, or failure to do so, may ultimately result in a need for more definitive action by the Court in order to ensure that the parties comply with their discovery obligations. My hope is that that won't be necessary, namely, that it will be necessary for me to sanction a party for failing to promptly comply with their discovery obligations in this case. The best way to avoid that is to remain in communication and to meet and confer regarding discovery disputes.

November 28, 2018 Tr. 4:17-5:5. As a result, counsel for Defendants was certainly on notice that sanctions were a possibility if they continued shirking their discovery obligations, and this factor too weighs in favor of imposing sanctions.

Client's complicity:  The Court has not been provided with sufficient evidence to determine whether or not Defendants have been complicit in their counsel's failure to produce documents to Plaintiff.  This factor, therefore, does not weigh in favor of imposing sanctions.

Prejudice to the moving party:  Plaintiff has certainly been prejudiced with respect of Defendants' repeated failure to meaningfully engage in the discovery process.  Because of counsel's failure to instruct his clients properly about discovery obligations, implement a litigation hold, or confirm that all relevant and responsive documents had been produced, Plaintiff has been provided a piecemeal production, receiving some documents long after deposing Defendants' witnesses.  Defendants' failures also necessitated that Plaintiff write the Court requesting judicial intervention multiple times, and finally bring this motion in March, 2019.  By depriving the Plaintiff of discovery, Defendants have prejudiced Plaintiff by making it both difficult and unnecessarily expensive for him to prosecute his case.  This factor weighs in favor of a severe sanction.

Overall, the factors I am to consider weigh heavily in favor of imposing sanctions for Defendants' failure to comply with its discovery obligations.  Defendants must pay the reasonable direct costs and expenses Plaintiff incurred chasing after all of the discovery he was owed after the October 30, 2018 conference—namely, the reasonable costs and expenses Plaintiff incurred in writing emails to his adversary and letters to the Court, participating in meet and confers and Court-ordered conferences, and in making this motion.  Further, because Plaintiff has already taken depositions in connection with the underlying litigation, Defendants must also pay any reasonable attorneys' fees and costs associated with any renewed depositions necessary or appropriate in light of Defendants' post-deposition productions.

### B. Spoliation

Plaintiff's assertion that Defendants spoliated evidence arises from Mr. Coello's deletion of text messages allegedly pertinent to Plaintiff's case, and Defendants' alleged fabrication of tax documents that it produced to Plaintiff during discovery.

9

Spoliation is "the destruction or significant alteration of evidence . . . in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). In order to establish the spoliation of evidence, the party seeking sanctions must show (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the evidence was destroyed with a culpable state of mind, and (3) that the destroyed evidence was relevant to the party's claim or defense. *See Byrnie*, 243 F.3d at 107-09. A party seeking sanctions for spoliation bears the burden of establishing the elements these elements by a preponderance of the evidence. *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017)

Plaintiff has not established the first element of this test. Although Plaintiff served Defendants with a document preservation notice on February 7, 2018, and filed his complaint on March 26, 2018, counsel for Defendants only issued a litigation hold for the first time on February 13, 2019. Cohen Decl. Ex. 2 at 2. To be sure, this delay is inexcusable. *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013) (finding gross negligence where, among other document preservation delinquencies, a plaintiff failed to issue a litigation hold until fifteen months after sending Defendants a Notice of Claim). But the duty to preserve evidence attaches "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

Plaintiff did not present the Court with a sufficient record that establishes, by a preponderance of the evidence, that Mr. Coello deleted the text messages after he was notified or should have known that the evidence may be relevant to future litigation. During his deposition, Mr. Coello testified that his deletion predated his awareness of the litigation:

> Q. Why did you delete your texts with Rob?
> A. Because I didn't want to get involved.
> Q. Was that before or after the lawyers told you that there was a lawsuit?

10

> A. This is way before that.

Cohen Decl. Ex. 1 at 41:5-9. This testimony fails to establish whether Mr. Coello deleted the text messages "way before" he could have anticipated that a lawsuit would be filed, "way before" the lawsuit was filed, or just "way before" Rock Group's lawyers told him that about the lawsuit. Thus, Plaintiff has not proved by a preponderance of the evidence that Mr. Coello spoliated evidence—additional facts are required to support this contention.

Plaintiff also asserts that Defendants produced fabricated tax documents, establishing a basis for spoliation sanctions. Mot. at 17. But Plaintiff failed to support this accusation with any evidence other than two emails Ms. Cohen sent defense counsel accusing Defendants of manufacturing evidence. Cohen Decl. Exs. 4-5. And Mr. Howard affirmed in a sworn affidavit that Defendants drafted 1099 tax forms for Plaintiff but sent them to Mr. Bianco prematurely. Howard Aff. at 3. Because Plaintiff bears the burden of proof to establish its entitlement to sanctions for spoliation sanctions, the Court declines to award sanctions on this ground.

## IV. CONCLUSION

Plaintiff's motion for sanctions is granted in part and denied in part. Defendants must pay the reasonable direct costs and expenses Plaintiff incurred chasing after all of the discovery he was owed after the October 30, 2018 conference—namely, the reasonable costs and expenses Plaintiff incurred in writing emails to his adversary and letters to the Court, participating in meet and confers and Court-ordered conferences, and in making this motion. Further, because Plaintiff has already taken depositions in connection with the underlying litigation, Defendants must also pay any reasonable attorneys' fees and costs associated with any renewed depositions necessary or appropriate in light of Defendants' post-deposition productions.

Plaintiff is directed to submit a fee application documenting proof of his fees and expenses in bringing this motion within 30 days of this decision. Defendants may adduce any documentation regarding financial hardship that would hinder its ability to pay the Court's sanction as part of any

11

opposition to the reasonableness of Plaintiff's fees.  Plaintiff may supplement this application at the close of discovery with fees and costs associated with any renewed depositions necessary given the Court's decision here.

One final note:  these are the first sanctions the Court has imposed in this case, but they may not be the last.  If it becomes evident that Plaintiff must bear other direct costs and fees as a result of the same misconduct, or if additional steps are required to ensure Defendants' compliance with their discovery obligations, the Court will determine whether it is appropriate to impose additional sanctions.

The Clerk of Court is directed to terminate the motion pending at docket number 54.

SO ORDERED.

Dated:  December 16, 2019  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge